**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**EVELYN FAYE GILMORE**                                                                       **PLAINTIFF**

**v.**                                                         **No. 40:22-cv-00154-MPM-DAS**

**DOLGENCORP, LLC, d/b/a**                                                  **DEFENDANT**
**DOLLAR GENERAL**

## ORDER

This is an employment discrimination case. (ECF No. 1). The matter is before the Court on Defendant DolgenCorp, LLC d/b/a Dollar General's ("Dollar General") Motion for Summary Judgment. (ECF No. 32). Plaintiff Gilmore has responded in opposition to the motion, and Defendant has replied. The Court has thoroughly reviewed the record and carefully considered the applicable law. This is the decision of the Court.

### BACKGROUND

At the time she filed this lawsuit, Plaintiff Gilmore was fifty-four years old and had been employed by Dollar General for approximately twenty years. (ECF No. 1, PageID.2). Ms. Gilmore is a Black female. *Id.* She holds an MBA with a concentration in human resources. *Id.*

In early 2022, Ms. Gilmore applied to participate in Dollar General's Manager in Training ("MIT") program. *Id.* The MIT program is "for high potential warehouse supervisor Level 2 employees … interested in pursuing a manager role." (Joi dep., ECF No. 32-5, PageID.131). The program helps supervisors advance in the company. (Sanchez dep., ECF No. 32-7, PageID.182). To be eligible for the MIT program, an employee must meet criteria including, among other things, being "[r]ated as 'Good' or higher on last performance review"; "[c]urrent performance is meeting job expectations;" "[n]ot on a written or final counseling within last 12 months"; "[e]mployee has

history of good attendance." (Bass e-mail, ECF No. 32-10, PageID.211). It is undisputed that Ms. Gilmore satisfied all criteria for participation.

Eight employees applied for admission to the MIT program, including two men older than Ms. Gilmore and four men younger than she. Ms. Gilmore was the only female applicant. Her application was unsuccessful. Dollar General selected three male applicants: Roderick Fleming, Jeremy Jones, and Glenn Hill. Mr. Fleming and Mr. Jones are both Black males in their early thirties, and Mr. Hill is a white male approximately fifty-six years old. (ECF No. 42, PageID.425).

In late April 2022, Ms. Gilmore filed an EEOC charge of discrimination claiming that the decision not to admit her to the MIT program amounted to unlawful age and sex discrimination. (ECF No. 1, Page ID.3). On July 1, 2022, Dollar General terminated Ms. Gilmore's employment. *Id.* Ms. Gilmore asserts that the reasons Dollar General provided for her termination were false and pretextual. *Id.* She amended her EEOC charge to add claims of race discrimination and retaliation. (*Id.*, PageID.4.)

Ms. Gilmore brings claims of age discrimination under the Age Discrimination in Employment Act ("ADEA"); race and sex discrimination under Title VII and 42 U.S.C. § 1981; and retaliation under Title VII and 42 U.S.C. § 1981. Defendant Dollar General seeks summary judgment in its favor as to all claims.

## LEGAL STANDARDS

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). A genuine dispute as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of

the case. *See Saketkoo v. Adm'r of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (citing *Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir. 2000)). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150 (2000). If a moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc City Sch. Dist.,* 634 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.,* 37 F.2d 1069, 1075 (5th Cir. 1994). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA also prohibits an employer from "limit[ing] . . . employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [that individual's] status as an employee, because of such individual's age." *Id.* at § 623(a)(2). An anti-retaliation provision in the ADEA makes it unlawful to discriminate against any individual because he or she "has opposed any practice made unlawful by this section" or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." *Id.* at § 623(d).

3

Similarly, Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, it is unlawful for an employer "to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training." *Id.* at § 2000e-2(d). Title VII contains an antiretaliation provision that "forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. 42 U.S.C. § 2000e-3(a)).

Employment discrimination claims brought under the ADEA and Title VII "typically rely on circumstantial evidence that is evaluated under the burden-shifting framework first articulated in *McDonnell Douglas*." *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). Under this framework, a plaintiff must establish a prima facie case of age discrimination by showing that (1) she experienced an adverse employment action; (2) she was qualified for the position; (3) she was within the protected class at the time of the adverse employment action; and (4) a causal connection between her membership in the protected class and the adverse action. *See id.* If a plaintiff establishes a prima face case, the defendant bears the burden of producing evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 476. If the defendant satisfies this burden, the plaintiff must come forward with evidence that the legitimate reasons proffered were not the true reasons but instead a pretext for discrimination. *Id.*

4

**DISCUSSION**

*1. Exclusion from MIT Program*

Ms. Gilmore contends that she was unlawfully excluded from the MIT program because of her age (in violation of the ADEA) and her race and gender (in violation of Title VII). She premises her claims on circumstantial evidence, and so the *McDonnell Douglas* framework applies. It is undisputed that Ms. Gilmore has established the second and third elements of the prima facie case: Ms. Gilmore was both qualified for the program and a member of the protected class. The parties disagree regarding whether exclusion from the MIT program amounts to an adverse employment action and whether Ms. Gilmore has shown a causal connection between her membership in a protected class and her exclusion from the program.

A plaintiff "plausibly alleges a disparate-treatment claim under Title VII if she pleads discrimination in hiring, firing, compensation, or the 'terms, conditions, or privileges' of her employment." *Hamilton v. Dallas County*, 79 F.4th 494, 497 (5th Cir. 2023) (en banc). A plaintiff need not also show an "ultimate employment decision" such as hiring, firing, or promotion. *Id.* Title VII's coverage extends beyond "economic" or "tangible" discrimination." *Id.* at 501 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 75, 78 (1986). Title VII's prohibition on employment discrimination covers "not only 'terms' and 'conditions' in the narrow contractual sense, but evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Id.* (quotation omitted). "Any 'benefits that comprise the incidents of employment, or that form an aspect of the relationship between the employer and employees,' the Court has explained, fall within Title VII's ban on discrimination." *Id.* at 501-02 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984)).

5

The Court is not persuaded that exclusion from the MIT program rises to the level of an adverse employment action within the ADEA and Title VII framework. The record reflects that the program did not affect salary, benefits, or the day-to-day conditions of work. Nor did participation guarantee promotion. To the contrary, the record reflects that employees who completed the program and sought promotion had to follow the same process as everyone else. There were other pathways to promotion. Moreover, the record reflects that an unsuccessful application to participate in the program typically resulted in assistance preparing to participate in a later program cohort. Even assuming that exclusion from the program amounts to an adverse employment action, Ms. Gilmore has not shown disparate treatment linked to her age or race. Two of the three successful applicants were Black, and one of the successful applicants was older than Ms. Gilmore. Ms. Gilmore correctly points out that no woman was selected for the program and that this could indicate gender-based bias. However, Ms. Gilmore was the only woman out of the eight applicants for three positions. There is no other record evidence that sex was a factor in the decision. Because Ms. Gilmore has not established a prima facie case of discrimination based on her exclusion from the MIT program, her ADEA and Title VII claims premised on exclusion from the program fail. Defendant is entitled to summary judgment as to those claims.

*2. Retaliation*

The Court finds Ms. Gilmore's claims of retaliation more persuasive. Ms. Gilmore has shown a close temporal proximity – approximately two months – between filing an EEOC charge and the termination of her employment. According to Defendant, Ms. Gilmore's employment was terminated because she chose not to stay and continue looking for seventy-five missing boxes. Based on Ms. Gilmore's deposition testimony, a reasonable factfinder could determine that she did all she reasonably could to find the boxes before leaving and that termination was

6

disproportionate to the offense. It is undisputed that Ms. Gilmore was well-qualified for the MIT program, which suggests that Ms. Gilmore was a valuable and well-regarded employee. The record reflects that Ms. Gilmore had not been disciplined for over a year. Ms. Gilmore received her first verbal warning since 2020 only after she filed the EEOC complaint in the spring of 2022. Defendant contends that Ms. Gilmore's supervisor was unaware of the EEOC complaint, but it is undisputed that the Human Resources department was well aware of it and a necessary participant in the decision to terminate. On this record, there is a genuine issue as to whether Dolgencorp terminated Ms. Gilmore's employment in retaliation for her EEOC charge, and Dolgencorp is not entitled to summary judgment on the retaliation claims.

## CONCLUSION

For these reasons, the Court concludes that Dolgencorp is entitled to summary judgment as to Ms. Gilmore's claims of discrimination under the ADEA and Title VII and that summary judgment as to Ms. Gilmore's claims of retaliation under the ADEA and Title VII is not warranted.

**ACCORDINGLY, IT IS ORDERED**:

Defendant's Motion for Summary Judgment (ECF No. 32) is **GRANTED** to the extent Defendant seeks summary judgment in its favor as to the claims of discrimination under the ADEA and Title VII and is **DENIED** in all other respects. Trial as to Plaintiff's claims of retaliation under the ADEA and Title VII remains scheduled for March 4, 2024.

**SO ORDERED** this the 13th day of February, 2024.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**